Charles P. LaPolla (CL 0156)
Sean P. McMahon (SM 1202)
OSTROLENK FABER LLP
1180 Avenue of the Americas
New York, New York 10036-8403
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorneys for Plaintiff Tenax S.p.A.

JUDGE BRODERICK

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

14 CV 9124

NOV 17 2014

------------------------------------------------------------x
TENAX S.p.A.,

                  Plaintiff,    :   Civil Action No.

      v.

WUHAN KEDA MARBLE
PROTECTIVE MATERIALS CO., LTD.,

                  Defendant.
------------------------------------------------------------x

## COMPLAINT

Plaintiff Tenax S.p.A. ("Tenax"), by and through its attorneys Ostrolenk Faber LLP, hereby complain of the activities of Defendant Wuhan Keda Marble Protective Materials Co., Ltd. as follows:

### PARTIES

1.    Plaintiff Tenax S.p.A. ("Tenax") is a joint stock company organized and existing under the laws of Italy, having an address at Via I Maggio 226 Dolce's Frazione, Volargne (Verona) Italy.

{01670818.1}

2. On information and belief, Defendant Wuhan Keda Marble Protective Materials Co., Ltd. is a company organized and existing under the laws of China, having an address at No. 2 Zhangbo Road, Dongxihu District, Wuhan City, Hubei, China.

## JURISDICTION

3. This Court has original jurisdiction over the causes of action herein due to the diversity of citizenship of the parties, under 28 U.S.C. §1332(a)(1), and the matter in controversy exceeds the sum or value of $75,000 under 28 U.S.C. §1332(a).

4. This Court also has original jurisdiction over the causes of action herein due to the presence of a federal question under 28 U.S.C. §1331.

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant conducts business in the State of New York and in this District and a substantial part of the events giving rise to the claims have occurred in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

### Tenax's Activities

7. Established in Italy in 1960, Tenax developed a unique process of extruding and forming thermoplastic polymers and is an international leader in this field with production facilities, technical services, distribution centers and sales departments in more than 50 countries worldwide.

8. Beginning in 1980, and continuing to the present, Tenax has designed, manufactured and sold in connection with its TENAX trademark adhesives and resins for marble, granite, natural stones, granite powder agglomerates, and porcelain stoneware; waxes for polishing stones and ceramics and blades for power saws, blades with diamond coated segments, grindstones; power-operated segments and discs with diamond coated segments for planing,

polishing and cutting stones, ceramics and similar materials; and abrasive blocks for polishing machines ("TENAX Goods").

9. Tenax owns the following United States Trademark registrations:

| Mark | Reg. No. Issue Date | Goods |
|---|---|---|
| TENAX | 2,290,107 November 2, 1999 | Machine parts, namely, abrasive blocks for polishing machines of lapidary materials. |
| TENAX | 2,591,547 July 9, 2002 | Adhesives for use in the gravestone sector, namely for marble, granite, natural stones, marble and granite powder agglomerates, porcelain stoneware; unprocessed synthetic and artificial epoxy resins for use in the gravestone sector, namely for marble, granite, natural stones, marble and granite powder agglomerates, porcelained stoneware, in Class 1; waxes for polishing stones, ceramics and the like, in Class 3; machine parts, namely blades, blades for power saws, blades with diamond coated segments, grindstones; power-operated segments and discs with diamond coated segments for planning, polishing and cutting stone, ceramics and the like, in International Class 7. |
| TENAX | 3,265,330 July 17, 2007 | Small items in metal hardware for use in gardening, namely, screws, bolts, nails, pins, staples, rivets, anchors, clips, hooks, nuts; caps for stakes, poles, tubing ends; poles of metal for fences, fences of metal, in Class 6; hand tools, namely, hand-held cutting tools, in Class 8; apparatus and instruments for analyzing nutritional substances with regards to plant growth and for "in vitro" analysis of soil, namely, water meters; apparatus and instruments for analysis, control and/or measurement of soil and growth substrates, namely, water meters; pH meters; moisture meters; devices for testing and analyzing the health of plants, namely, moisture testers, pH testers, in Class 9; plastic films and sheets for |

| | | |
|---|---|---|
| | | use in gardening, vegetable growing and agriculture, namely, plastic films for covering, fencing and enclosing plants; plastics in extruded form for use in manufacture, in Class 17; plastic fittings and fastening devices, namely, meshes, grids, pipes, clips, hooks, pins, in Class 20. |
| TENAX | 3,527,644<br>November 4, 2008 | Non-metallic construction and building materials, namely, hardwood, decking, wood and plastic wood substitute boards, soffits, fascia, logs, posts, plastic pipe supports, plastic webbing material used to reinforce bituminous water proofing sheets, grids, and meshes; non-metallic geotextiles for reinforcement of soil; non-metallic geotextiles for stabilization of soil; plastic wallboards; plastic boundary marking posts; plastic tiles; geotextiles in the nature of non-metallic meshes for filtration, separation and drainage of soil; non-metallic stabilizing geotextiles to facilitate the growth of grass and turf in soil, sand and other growing media; non-metallic construction pipes, namely, sewer pipes, water pipes, rigid polypropylene pipes used in geothermal heating and cooling systems, ceramic drain pipes, clay pipes; Concrete drainage structures, namely, trench or storm manholes; non-metallic gutter guards, in Class 19; Commercial nets; commercial nets completely or substantially of plastic material; commercial extruded plastic nets; commercial laminated nets; commercial laminated nets in the form of sheets and/or containing fabrics; one-way stretched commercial plastic nets; two-way stretched commercial plastic nets; commercial plastic nets, namely, commercial plastic nets for fencing, gardening, horticulture, agriculture, aviculture, pisciculture and packing; commercial nets and tarpaulins for cultivation protection, cultivation defense and cultivation growth, namely, commercial nets and tarpaulins for shading, windbreaks, anti-hail, anti-aphid, for pollination, for protection against birds, for mulching, for use as thermo-reflecting |

>screens, to promote growth of cultivation, for creepers; commercial support nets for floriculture and horticulture; commercial nets for harvesting and drying of agricultural products, for packing and transportation of plants, for flower picking and production of grass carpets; commercial packaging nets, namely, nets for protection of bottles or mechanical parts of machines; commercial separation nets for packing; commercial protection and polyester plastic packing nets for furnishing articles, for packaging of toys, bottles and for packaging of food products; commercial nets for plant wrapping; commercial nets for packing of industrial articles such as pipes and panels; tarpaulins, namely, biodegradable fleeces for protection and against weeds; protection tarpaulins for plants; horticulture bags and sacks, namely, bags and sacks made of woven synthetic or natural fibers or plastic materials, all for use in growing any type of plant, shrub or tree; tents and awnings; non-metallic commercial nets, namely, non-metallic nets for filtration, separation and drainage; commercial nets for filtering; commercial dockyard nets. commercial nets for reinforcement; commercial protection nets, namely, nets for crop protection and plant protection; commercial covering nets for scaffolding; commercial nets for signaling piping systems for gas, water, electricity and telephony

Copies of the Certificates of Registration are attached hereto as **Exhibit A**.

10. These registrations are valid, presently subsisting and in full force and effect and Registration Nos. 2,290,107 and 2,591,547 are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. §1065. Pursuant to Section 33(b) of the Lanham Act, 15 U.S.C. §1115(b), these registrations constitute conclusive evidence of the validity of the marks, of Tenax's ownership of the marks and its exclusive right to use these marks in commerce on and in connection with the goods set forth in the registrations.

11. Tenax has expended large sums of money and great time and effort in developing, advertising and promoting its TENAX trademark as an indicia of the source of origin for the TENAX Goods. As a result of the extensive advertising, promotion and long term use of TENAX as a trademark, sales of goods under the TENAX trademark have been substantial resulting in significant revenues.

12. The TENAX trademark is extremely well-known among the trade and the purchasing public in the United States and this mark has acquired tremendous strength, purchaser recognition and fame, and is therefore strong and entitled to a wide scope of protection.

13. As a result of its long-standing, continuous and widespread use throughout the United States on and in connection with the TENAX Goods, the TENAX trademark has also acquired substantial consumer goodwill and represents an enormously valuable asset for Tenax.

### Defendant's Unlawful Activities

14. On information and belief, Defendant manufactures and sells in the United States and elsewhere adhesives, glues and resins for industrial and commercial use ("Defendant's Goods") under the trademark TEENIAX.

15. On information and belief, Defendant's Goods are identical or closely similar to the TENAX Goods and are sold to the same classes of customers in the same channels of trade as the TENAX Goods.

16. On information and belief, Defendant markets, promotes and advertises Defendant's Goods in the same print and electronic media utilized by Tenax for the TENAX Goods.

17. On information and belief, Tenax and Defendant are competitors.

18. Defendant's TEENIAX trademark, with the same first two letters and the same last two letters, is closely similar in spelling, pronunciation and appearance to the TENAX trademark.

19. Defendant's TEENIAX trademark is confusingly similar to the TENAX trademark.

20. Defendant's use of TEENIAX as a trademark for Defendant's Goods has been without authorization, license or permission from Tenax.

21. On information and belief, Defendant willfully adopted the TEENIAX trademark for use in connection with Defendant's Goods with knowledge of Tenax's TENAX trademark and Tenax's extensive use of this mark for the TENAX Goods. Defendant had knowledge of the TENAX trademark as a result of, *inter alia*, the existence of Tenax's federal trademark registrations for the mark.

22. Defendant is not entitled to use TEENIAX as a trademark for Defendant's Goods.

23. Defendant is not entitled to a federal trademark registration for TEENIAX for any of the goods identified in U.S. Trademark Application Serial No. 85/887,343.

## Count I

### (Trademark Infringement under 15 U.S.C. §1114)

24. Tenax repeats and realleges the averments contained in Paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. Defendant is using TEENIAX as a trademark without Tenax's authorization on and in connection with Defendant's Goods in a manner that is likely to cause confusion among consumers.

26. The foregoing acts and conduct of Defendant are likely to cause confusion, to cause mistake, and/or deceive the public, including prospective purchasers of the TENAX Goods, into mistakenly believing that Defendant is Tenax or is a licensee of Tenax or that Defendant and its activities are authorized, endorsed, sponsored or approved by Tenax or that Defendant and its activities originate with or are connected or associated with Tenax.

27. Defendant's acts are intended to reap the benefit of the goodwill that is associated with the TENAX trademark.

28. The foregoing acts and conduct of Defendant constitutes willful, deliberate and bad faith infringement of Tenax's registered TENAX trademarks set forth in Registration Nos. 2,290,107; 2,591,547; 3,265,330; and 3,527,644, in violation of §32 of the Lanham Act (as amended), 15 U.S.C. §1114.

29. By reason of the foregoing, Tenax is being irreparably damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from continuing to commit the aforesaid acts.

30. Tenax has no adequate remedy at law.

### Count II

### (False Designation of Origin under 15 U.S.C. §1125(a))

31. Tenax repeats and realleges the averments contained in Paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. The foregoing acts and conduct of Defendant are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's Goods with Tenax and the TENAX Goods.

33. Defendant's acts are intended to reap the benefit of the goodwill that is associated with the TENAX trademark.

34. The foregoing willful, deliberate and bad faith acts and conduct of Defendant constitute a false designation of origin and a false description and representation of fact in violation of §43(a) of the Lanham Act (as amended), 15 U.S.C. §1125(a).

35. By reason of the foregoing, Tenax is being damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from the aforesaid acts.

36. Tenax has no adequate remedy at law.

## Count III

### (Federal Trademark Dilution (15 U.S.C. § 1125(c))

37. Tenax repeats and realleges the averments contained in Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Tenax has extensively and continuously promoted and used its TENAX mark in the United States. The TENAX trademark became a famous and well-known indicia of the TENAX Goods well before Defendant commenced its unauthorized use of the TEENIAX mark for Defendant' Goods complained of herein.

39. Prior to commencing use of the TEENIAX mark, Defendant was aware that the TENAX trademark had been extensively used in connection with the TENAX Goods.

40. Defendant is making commercial use in commerce of a mark that dilutes and is likely to dilute the distinctiveness of the TENAX trademark by eroding the public's exclusive identification of this famous mark with Tenax and otherwise lessening the capacity of the TENAX trademark to identify and distinguish the TENAX Goods, and by tarnishing the TENAX

mark by associating it with goods that do not originate from, are sponsored by or endorsed by Tenax and are not subject to Tenax's control, review and/or approval.

41. Defendant's willful, deliberate and bad faith acts have caused and will continue to cause irreparable injury to Tenax's goodwill and business reputation, and dilution of the distinctiveness and value of the TENAX trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Tenax, therefore, is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

42. By reason of the foregoing, Tenax is being damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from the aforesaid acts.

43. Tenax has no adequate remedy at law.

## Count IV

**(Unfair and Deceptive Trade Practices Under Applicable State Law)**

44. Tenax repeats and realleges the averments contained in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Defendant has misrepresented the nature, characteristics and qualities of their goods in New York State to a material segment of the public by representing that they and/or their services in New York State are provided by or associated with Tenax.

46. Through such acts, Defendant has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York.

47. Defendant has engaged in deceptive acts or practices in the conduct of their business in violation of New York General Business Law §349.

48. By reason of the foregoing, Tenax is being damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from the aforesaid acts.

49. Tenax has no adequate remedy at law.

## Count V

### (Common Law Unfair Competition)

50. Tenax repeats and realleges the averments contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Tenax's TENAX trademark is inherently distinctive.

52. By adopting and using the mark TEENIAX, Defendant is engaging in common law unfair competition with Tenax by misappropriating or attempting to misappropriate Tenax's TENAX trademark and the goodwill and reputation associated with it in a manner which is likely to deceive and confuse the public into believing that Defendant's Goods originate with or are those of Tenax or are sponsored by, licensed by, endorsed by, or otherwise associated with Tenax, when in fact they are not.

53. By reason of the foregoing, Tenax is being damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from the aforesaid acts.

54. Tenax has no adequate remedy at law.

## Count VI

### (Trademark Dilution and Injury to Business Reputation Under New York Statutory Law)

55. Tenax repeats and realleges the averments contained in Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Tenax has extensively and continuously promoted and used Tenax's TENAX trademark in the United States, and this mark has thereby become a distinctive and well-known indicia of the TENAX Goods.

57. Defendant's use of the TEENIAX mark dilutes, blurs and/or tarnishes the distinctiveness of Tenax's TENAX trademark by eroding the public's exclusive identification of the distinctive and well-known TENAX mark with Tenax.

58. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Tenax's TENAX mark.

59. Defendant is causing and, unless enjoined, will continue to cause irreparable injury to Tenax's goodwill and business reputation in violation of N.Y. Gen. Bus. Law § 360-l.

60. By reason of the foregoing, Tenax is being damaged by Defendant's activities and will continue to be damaged unless Defendant is enjoined from the aforesaid acts.

61. Tenax has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Tenax prays for the following relief:

i. An Order permanently enjoining and restraining Defendant, its divisions, affiliates, subsidiaries, officers, partners, agents, servants and employees and those persons in active concert or participation with it from engaging in, offering, or providing goods or services in connection with the TEENIAX trademark and any other trademark, service mark, trade name, business name, or other indication of source of origin, that is confusingly similar to Tenax's TENAX trademark.

ii. An Order preliminarily and permanently enjoining Defendant, its divisions, affiliates, subsidiaries, officers, partners, agents, servants and employees and those persons in active concert or participation with it from engaging in any acts of false designation of origin or false description or representation or any acts of unfair competition and/or deceptive trade practices and/or acts of federal or state trademark dilution in connection with the TEENIAX

trademark and any other trademark, service mark, trade name, business name, or other indication of source of origin, that is confusingly similar to Tenax's TENAX trademark.

    iii.    An Order to withdraw with prejudice U.S. Trademark Application No. 85/887,343.

    iv.    An accounting and award of Defendant's profits and/or Tenax's damages sustained as a result of Defendant's acts complained of herein.

    v.    A trebling of the award of Defendant's profits and/or Tenax's damages in view of the willful and intentional nature of Defendant's conduct.

    vi.    An award to Tenax of such punitive damages as is appropriate in view of the willful conduct by Defendant.

    vii.    An award to Tenax of its costs in this action including its reasonable attorneys' fees.

    viii.    Such other and further relief as the Court may deem just and equitable under the circumstances herein.

## JURY DEMAND

Tenax seeks a jury trial on all issues entitled to be tried by a jury.

Dated: November 17, 2014  
       New York, New York

Respectfully submitted,

_____  
Charles P. LaPolla (CL 0156)  
Sean P. McMahon (SM 1202)  
OSTROLENK FABER LLP  
1180 Avenue of the Americas  
New York, New York 10036-8403  
Telephone: (212) 382-0700

Attorneys for Plaintiff Tenax S.p.A.

# Exhibit A

{01375142.1}

Int. Cl.: 7

Prior U.S. Cls.: 13, 19, 21, 23, 31, 34 and 35

**United States Patent and Trademark Office**

Reg. No. 2,290,107
Registered Nov. 2, 1999

## TRADEMARK
### PRINCIPAL REGISTER

### TENAX

TENAX S.P.A. (ITALY JOINT STOCK COMPANY)
VIA I MAGGIO 226
DOLCE' FRAZ. VOLARGNE (VERONA), ITALY

FOR: MACHINE PARTS, NAMELY, ABRASIVE BLOCKS FOR POLISHING MACHINES OF LAPIDARY MATERIALS, IN CLASS 7 (U.S. CLS. 13, 19, 21, 23, 31, 34 AND 35).

FIRST USE 10-7-1991; IN COMMERCE 10-7-1991.

SER. NO. 75-535,205, FILED 8-12-1998.

THEODORE MCBRIDE, EXAMINING ATTORNEY

Int. Cls.: **1, 3, 6 and 7**

Prior U.S. Cls.: **1, 2, 4, 5, 6, 10, 12, 13, 14, 19, 21, 23, 25, 26, 31, 34, 35, 46, 50, 51 and 52**

**United States Patent and Trademark Office**

Reg. No. 2,591,547
Registered July 9, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## TENAX

TENAX S.P.A. (ITALY JOINT STOCK COMPANY)
VIA I MAGGIO 226
DOLCE' FRAZIONE VOLARGNE (VERONA), ITALY

FOR: ADHESIVES FOR USE IN THE GRAVESTONE SECTOR, NAMELY FOR MARBLE, GRANITE, NATURAL STONES, MARBLE AND GRANITE POWDER AGGLOMERATES, PORCELAIN STONEWARE; UNPROCESSED SYNTHETIC AND ARTIFICIAL EPOXY RESINS FOR USE IN THE GRAVESTONE SECTOR, NAMELY FOR MARBLE, GRANITE, NATURAL STONES, MARBLE AND GRANITE POWDER AGGLOMERATES, PORCELAINED STONEWARE, IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 12-31-1960; IN COMMERCE 12-31-1980.

FOR: WAXES FOR POLISHING STONES, CERAMICS AND THE LIKE, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 12-31-1960; IN COMMERCE 12-31-1980.

FOR: WIRE WITH DIAMOND COATED BEADS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 12-31-1980; IN COMMERCE 12-31-1980.

FOR: MACHINE PARTS, NAMELY BLADES, BLADES FOR POWER SAWS, BLADES WITH DIAMOND COATED SEGMENTS, GRINDSTONES; POWER-OPERATED SEGMENTS AND DISCS WITH DIAMOND COATED SEGMENTS FOR PLANNING, POLISHING AND CUTTING STONES, CERAMICS AND THE LIKE, IN CLASS 7 (U.S. CLS. 13, 19, 21, 23, 31, 34 AND 35).

FIRST USE 12-31-1980; IN COMMERCE 12-31-1980.

SER. NO. 76-331,278, FILED 10-30-2001.

KELLEY WELLS, EXAMINING ATTORNEY

Int. Cls.: 6, 8, 9, 16, 17, 20, 21, 25 and 37

Prior U.S. Cls.: 1, 2, 5, 12, 13, 14, 21, 22, 23, 25, 26, 28, 29, 30, 32, 33, 35, 36, 37, 38, 39, 40, 44, 50, 100, 103 and 106

**United States Patent and Trademark Office**

Reg. No. 3,265,330

Registered July 17, 2007

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

# TENAX

TENAX S.P.A. (ITALY ITALIAN JOINT-STOCK COMPANY)
VIA DELL'INDUSTRIA, 3
I-23897 VIGANO' (LECCO)
ITALY

FOR: CRUCIBLES OF COMMON METALS AND THEIR ALLOYS; IRONMONGERY, SMALL ITEMS OF METAL HARDWARE FOR USE IN GARDENING, NAMELY, SCREWS, BOLTS, NAILS, PINS, STAPLES, RIVETS, ANCHORS, CLIPS, TOOL HANGERS, HOOKS, NUTS, METAL RINGS FOR USE WITH PLANTS; SUSPENSION BRACKETS, FITTINGS AND FASTENING DEVICES FOR NETS, GRIDS, SHIELDS, WIRE GAUZES AND SHEETS WITH HOLES, NAMELY, HOOKS, CLIPS, ANCHORS, NUTS, METAL RINGS; CLAMPS FOR RODS, METAL PLUGS, CAPS FOR STAKES, POLES, TUBING ENDS; GASKET RINGS AND BANDS; CHAINS OF METAL FOR FENCING AND DELIMITING; FRAMES AND SUPPORTS OF METAL FOR BUILDING; NON-ELECTRIC CABLES AND WIRES OF COMMON METAL; WIRE GAUZE, NAMELY, WELDED WIRE GAUZE FOR GARDENING; TRELLIS OF METAL; POLES OF METAL FOR FENCES, FENCES OF METAL; FITTINGS OF METAL FOR HANGING BASKETS AND FOR SUPPORTING PLANTS; COPPER LABELS FOR PLANTS, SHRUBS AND TREES; METAL NETS; ALL OF THE AFOREMENTIONED GOODS ARE FOR USE IN GARDENING; THE ABOVE GOODS EXCLUDING SAFETY FASTENERS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FOR: HAND TOOLS, NAMELY, DRILLS, HAND-HELD CUTTING TOOLS, AUGERS, HAMMERS, PINCERS, RASPS, SCREWDRIVERS, SAWS, WRNECHES, TONGS, LOPPERS, SHEARS, SCISSORS, REACHERS; GARDEN TOOLS, NAMELY, DIBBLES, IMPLEMENTS AND TOOLS FOR SEEDING, NAMELY, HOES, HAND-OPERATED SPREADERS FOR SEEDS, IMPLEMENTS FOR PLANTATION, NAMELY, SPADES, DIGGERS, SODS, SHOVELS, PLANTERS; FORKS, TRANSPLANTERS, IMPLEMENTS FOR SCRAPING, NAMELY, SCRAPERS, RAKES; IMPLEMENTS FOR PICKING UP LEAVES, NAMELY, RAKES, BROOMS, IN CLASS 8 (U.S. CLS. 23, 28 AND 44).

FOR: APPARATUS AND INSTRUMENTS FOR ANALYZING NUTRITIONAL SUBSTANCES WITH REGARDS TO PLANT GROWTH AND FOR "IN VITRO" ANALYSIS OF SOIL, NAMELY, LABORATORY FILTERS, PHOTOMETERS, LABORATORY SPECTROGRAPHS, LABORATORY CENTRIFUGES, LABORATORY ION EXCHANGERS, CHROMATOGRAPHS, LABORATORY SPECTROSCOPES, LUMINOFLUX METERS, MICROSCOPES, DENSIMETERS, SCALES, BALANCES, WATER METERS; TEST TUBES AND SCIENTIFIC MEASURING INSTRUMENTS FOR USE IN THE ANALYSIS OF PRODUCTS FOR PLANT GROWTH AND FOR TESTING LIGHT, HUMIDITY, ACIDITY, ALKALINITY AND/OR THE PRESENCE OF NUTRITIONAL ELEMENTS, FEATURING NITROGEN, POTASSIUM AND/OR PHOSPHATE; APPARATUS AND INSTRUMENTS FOR ANALYSIS, CONTROL AND/OR MEASUREMENT OF SOIL AND GROWTH SUBSTRATES, NAMELY, LABORATORY FILTERS, PHOTOMETERS, LABORATORY SPECTROGRAPHS, LABORATORY CENTRIFUGES, LABORATORY ION EXCHANGERS, CHROMATOGRAPHS, LABORATORY SPECTROSCOPES, LUMINOFLUX METERS, MICROSCOPES, DENSIMETERS, SCALES, BALANCES, WATER ME-

TERS; PH METERS; MOISTURE METERS; LIGHT METERS; DEVICES FOR TESTING AND ANALYZING THE HEALTH OF PLANTS, NAMELY, MOISTURE TESTERS, PH TESTERS, HUMIDITY METERS, NITRATE ANALYZERS, POTASSIUM ANALYZERS, PHOSPHATE ANALYZERS, RAIN GAUGES; BAROMETERS; NON-MEDICAL INSTRUMENTS FOR MEASURING TEMPERATURE, NAMELY, THERMOMETERS; PROTECTION DEVICES FOR PERSONAL USE AGAINST ACCIDENTS, NAMELY, EYEGLASSES, EYESHADES, CLOTHING FOR PROTECTION AGAINST ACCIDENTS, IRRADIATION AND FIRE, KNEE-PADS FOR WORKERS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: PLASTIC MATERIALS FOR PACKAGING NAMELY, PLASTIC BUBBLE PACKS, PLASTIC WRAP; BAGS OF PAPER OR PLASTICS FOR PACKAGING; PAPER AND PLASTIC LABELS AND TAGS FOR USE WITH PLANTS; PAPER CLIPS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: PLASTIC FILMS AND SHEETS FOR USE IN GARDENING, VEGETABLE GROWING AND AGRICULTURE, NAMELY, SHEETS OF PERFORATED PLASTIC MATERIAL, SHEETING OF PLASTIC MATERIAL FOR PROTECTING PLANTS, PLASTIC FILMS FOR COVERING, FENCING AND ENCLOSING PLANTS; PLASTICS IN EXTRUDED FORM FOR USE IN MANUFACTURE, IN CLASS 17 (U.S. CLS. 1, 5, 12, 13, 35 AND 50).

FOR: PLASTIC FITTINGS AND FASTENING DEVICES, NAMELY, CLOSURES FOR CONTAINERS, BAGS, PACKAGING, NETS, JUNCTIONS FOR NETS, MESHES, GRIDS, PLASTIC FILMS, PIPES, RINGS, CLIPS, BOLTS, HOOKS, PINS, SCREWS; NUTS; RIVETS; GUDGEONS, TIES, STAKES AND OTHER SUPPORTS, NAMELY, CLAMPS, PEGS, STICKS FOR PLANTS AND TREES; THE ABOVE PRODUCTS EXCLUDING NON-METALLIC STRAPPING, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FOR: GLOVES FOR HOUSEHOLD PURPOSES, GARDENING GLOVES; BASKETS OF PLASTIC OR COATED WITH PLASTIC MATERIAL; BUCKETS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FOR: APRONS; SHOES, NAMELY, GARDENING SHOES; BOOTS, NAMELY, WATERPROOF BOOTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FOR: INSTALLATION, MAINTENANCE AND REPAIR SERVICES FOR HEAT-REFLECTING SYSTEMS AND ANTI-HAIL AND ANTI-APHID SYSTEMS, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF INTERNATIONAL REGISTRATION 0885712 DATED 7-12-2005, EXPIRES 7-12-2015.

OWNER OF U.S. REG. NO. 1,193,650.

SER. NO. 79-024,146, FILED 7-12-2005.

SARAH WAYDA, EXAMINING ATTORNEY

Int. Cls.: 19 and 22

Prior U.S. Cls.: 1, 2, 7, 12, 19, 22, 33, 42 and 50

**United States Patent and Trademark Office**

Reg. No. 3,527,644
Registered Nov. 4, 2008

## TRADEMARK
## PRINCIPAL REGISTER

# TENAX

TENAX S.P.A. (ITALY JOINT STOCK COMPANY)
VIA DELL'INDUSTRIA, 3
I-23897 VIGANO' (LECCO)
ITALY

FOR: NON-METALLIC CONSTRUCTION AND BUILDING MATERIALS, NAMELY, HARDWOOD, DECKING, WOOD AND PLASTIC WOOD SUBSTITUTE BOARDS, SOFFITS, FASCIA, LOGS, POSTS, PLASTIC PIPE SUPPORTS, PLASTIC WEBBING MATERIAL USED TO REINFORCE BITUMINOUS WATER PROOFING SHEETS, GRIDS, AND MESHES; NON-METALLIC GEOTEXTILES FOR REINFORCEMENT OF SOIL; NON-METALLIC GEOTEXTILES FOR STABILIZATION OF SOIL; PLASTIC WALLBOARDS; PLASTIC BOUNDARY MARKING POSTS; PLASTIC TILES; GEOTEXTILES IN THE NATURE OF NON-METALLIC MESHES FOR FILTRATION, SEPARATION AND DRAINAGE OF SOIL; NON-METALLIC STABILIZING GEOTEXTILES TO FACILITATE THE GROWTH OF GRASS AND TURF IN SOIL, SAND AND OTHER GROWING MEDIA; NON-METALLIC CONSTRUCTION PIPES, NAMELY, SEWER PIPES, WATER PIPES, RIGID POLYPROPYLENE PIPES USED IN GEOTHERMAL HEATING AND COOLING SYSTEMS, CERAMIC DRAIN PIPES, CLAY PIPES; CONCRETE DRAINAGE STRUCTURES, NAMELY, TRENCH OR STORM MANHOLES; NON-METALLIC GUTTER GUARDS, IN CLASS 19 (U.S. CLS. 1, 12, 33 AND 50).

FOR: COMMERCIAL NETS; COMMERCIAL NETS COMPLETELY OR SUBSTANTIALLY OF PLASTIC MATERIAL; COMMERCIAL EXTRUDED PLASTIC NETS; COMMERCIAL LAMINATED NETS; COMMERCIAL LAMINATED NETS IN THE FORM OF SHEETS AND/OR CONTAINING FABRICS; ONE-WAY STRETCHED COMMERCIAL PLASTIC NETS; TWO-WAY STRETCHED COMMERCIAL PLASTIC NETS; COMMERCIAL PLASTIC NETS, NAMELY, COMMERCIAL PLASTIC NETS FOR FENCING, GARDENING, HORTICULTURE, AGRICULTURE, AVICULTURE, PISCICULTURE AND PACKING; COMMERCIAL NETS AND TARPAULINS FOR CULTIVATION PROTECTION, CULTIVATION DEFENSE AND CULTIVATION GROWTH, NAMELY, COMMERCIAL NETS AND TARPAULINS FOR SHADING, WINDBREAKS, ANTI-HAIL, ANTI-APHID, FOR POLLINATION, FOR PROTECTION AGAINST BIRDS, FOR MULCHING, FOR USE AS THERMO-REFLECTING SCREENS, TO PROMOTE GROWTH OF CULTIVATION, FOR CREEPERS; COMMERCIAL SUPPORT NETS FOR FLORICULTURE AND HORTICULTURE; COMMERCIAL NETS FOR HARVESTING AND DRYING OF AGRICULTURAL PRODUCTS, FOR PACKING AND TRANSPORTATION OF PLANTS, FOR FLOWER PICKING AND PRODUCTION OF GRASS CARPETS; COMMERCIAL PACKAGING NETS, NAMELY, NETS FOR PROTECTION OF BOTTLES OR MECHANICAL PARTS OF MACHINES; COMMERCIAL SEPARATION NETS FOR PACKING; COMMERCIAL PROTECTION AND POLYESTER PLASTIC PACKING NETS FOR FURNISHING ARTICLES, FOR PACKAGING OF TOYS, BOTTLES AND FOR PACKAGING OF FOOD PRODUCTS; COMMERCIAL NETS FOR PLANT WRAPPING; COMMERCIAL NETS FOR PACKING OF INDUSTRIAL ARTICLES SUCH AS PIPES AND PANELS; TARPAULINS, NAMELY, BIODEGRADABLE FLEECES FOR PROTECTION AND AGAINST WEEDS; PROTECTION TARPAULINS FOR PLANTS; HORTICULTURE BAGS AND SACKS, NAMELY, BAGS AND SACKS MADE OF WOVEN SYNTHETIC OR NATURAL FIBERS OR PLASTIC MATERIALS, ALL FOR USE IN GROWING ANY TYPE OF PLANT, SHRUB OR TREE; TENTS AND AWNINGS; NON-METALLIC COMMERCIAL NETS, NAMELY, NON-METALLIC NETS FOR FILTRATION, SEPARATION AND DRAINAGE; COMMERCIAL NETS FOR FILTERING; COMMERCIAL DOCKYARD NETS; COMMERCIAL NETS FOR REINFORCEMENT; COMMERCIAL PROTECTION NETS, NAMELY, NETS FOR CROP PROTECTION AND PLANT PROTECTION; COMMERCIAL COVERING NETS FOR SCAFFOLDING; COMMERCIAL NETS FOR SIGNALING PIPING SYSTEMS FOR GAS, WATER, ELECTRICITY AND

TELEPHONY, IN CLASS 22 (U.S. CLS. 1, 2, 7, 19, 22, 42 AND 50).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF INTERNATIONAL REGISTRATION 0826215 DATED 9-30-2003, EXPIRES 9-30-2013.

OWNER OF U.S. REG. NO. 1,193,650.

SER. NO. 79-018,572, FILED 1-31-2005.

PAULA MAHONEY, EXAMINING ATTORNEY